# Docket No. 14-13739

**The United States**
**Court of Appeals**
**For**
**The Eleventh Circuit**
_____

**GeorgiaCarry.Org, Inc.,** *et.al.,* **Appellants**
**v.**
**U.S. Army Corps of Engineers, Appellees**
_____

**Appeal from the United States District Court**
**For**
**The Northern District of Georgia**
**The Hon. Harold L. Murphy, District Judge**

_____

**Brief of Appellants**

_____

**John R. Monroe**
**John Monroe Law, P.C.**
**9640 Coleman Road**
**Roswell, Georgia 30075**
**(678) 362-7650**
**Attorney for Appellants**

## <u>Certificate of Interested Persons</u>

Appellants certify that the following persons are known to Appellants to have an interest in the outcome of this case:

Beranek, Lori M., Esq.

Chytka, Col. John J.

Delery, Stuart F., Esq.

GeorgiaCarry.Org, Inc.

Kelleher, Diane, Esq.

Monroe, John R., Esq.

Murphy, The Hon. Harold L.

Riess, Daniel, Esq.

Raab, Michael S., Esq.

U.S. Army Corps of Engineers

Yates, Sally Quillian, Esq.

Wright, Abby C., Esq.

Appellants further certify that GeorgiaCarry.Org, Inc. has no parents or subsidiaries and is not publicly traded.

## Statement on Oral Argument

Appellants in this case request oral argument. The appeal involves the exercise of important fundamental Constitutional rights of the Appellants, namely, their ability to be free to exercise their Second Amendment rights to keep and carry arms in case of confrontation on tens of thousands of acres of federal property without arrest or detention for doing so. Moreover, the District Court decision directly conflicts with district and circuit court precedence in other circuits. The appeal is not frivolous and the dispositive issue has not been authoritatively determined.

**Table of Contents**

CERTIFICATE OF INTERESTED PERSONS ........................................2

TABLE OF CONTENTS ..........................................................................4

TABLE OF CITATIONS..........................................................................6

STATEMENT ON JURISDICTION..........................................................8

STATEMENT OF THE ISSUES ...............................................................9

    THE DISTRICT COURT ERRED IN DENYING PLAINTIFFS-APPELLANTS' MOTION FOR A

    PRELIMINARY INJUNCTION. ............................................................. 9

STATEMENT OF THE CASE .................................................................10

    NATURE OF THE CASE............................................................ 10

    PROCEEDINGS BELOW............................................................ 10

    STATEMENT OF THE FACTS ......................................................... 11

    STATEMENT ON THE STANDARD OF REVIEW .............................. 12

SUMMARY OF THE ARGUMENT .......................................................13

ARGUMENT AND CITATIONS OF AUTHORITY..............................14

    I.  ALL CORPS LAND IS NOT A SENSITIVE PLACE ........................... 14

    II. THE REGULATION IS ILLEGAL UNDER THE SECOND AMENDMENT ............................ 21

    III. THE DISTRICT COURT SHOULD HAVE ISSUED A PRELIMINARY INJUNCTION ............ 22

CERTIFICATE OF COMPLIANCE ......................................................27

**CERTIFICATE OF SERVICE** ................................................................**28**

**Table of Citations**

**Cases**

*Alabama v. U.S. Army Corps of Engineers,* 424 F.3d 1118, 1129 (11th Cir.
2005)......................................................................................................13

*District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d
(2008) ................................................................... 16, 18, 23, 26

*Ezell v. City of Chicago,* 651 F.2d 684, 690 (7th Cir. 2011)..........................25

*GeorgiaCarry.Org, Inc. v. Coweta County,* 288 Ga.App. 748, 655 S.E.2d
346 (2007) ...............................................................................21

*GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1259 (11th Cir. 2012) .16

*LSSI Data Corp. v. Comcast Phone, LLC,* 696 F.3d 1114, 1119 (11th Cir.
2012)......................................................................................24

*Morris v. U.S. Army Corps of Engineers,* 2014 U.S. Dist. LEXIS 147541,
Case No. 3:13-CV-336-BLW, Opinion on Cross Motions for Summary
Judgment, (D. Id., October 13, 2014) ("*Morris II*") .............. 18, 22, 25, 26

*Morris v. U.S. Army Corps of Engineers,* No. 3:13-CV-336-BLW, *Decision
on Motion for Preliminary Injunction,* p. 10 (D. Id. January 10, 2014)
("*Morris I*").............................................................................25

*Northeastern Florida Chapter of Association of General Contractors of*

    *American v. City of Jacksonville, Florida,* 896 F.2d 1283, 1285 (11th Cir.

    2990)................................................................................................25

*Palmer v. District of Columbia,* No. 1:09-CV-1482-FJS, Document No. 51

    (D.D.C., July 26, 2014) ..............................................................23

*Peruta v. County of San Diego,* 742 F.3d 1144, 1168 (9th Cir. 2014).... 18, 22

*United States v. Grace,* 461 U.S. 171, 180 (1983) ........................................20

*United States v. Kokinda,* 497 U.S. 720, 725 (1990) ....................................19

## Statutes

**28 U.S.C. § 1331** ........................................................................................9

O.C.G.A. § 16-11-126(g)................................................................................21

O.C.G.A. § 16-11-127(c)................................................................................20

O.C.G.A. § 16-11-129 ....................................................................................20

## Rules

**F.R.A.P. § 4(a)(1)(A)**..................................................................................8

## Statement on Jurisdiction

The District Court had jurisdiction of this case because the case involved federal questions under 28 U.S.C. § 1331 and the United States and its officers are defendants. 28 U.S.C. § 1346(a).

The District Court entered an order on August 18, 2014, denying Plaintiffs-Appellants' motion for a preliminary injunction**.** Doc. 19. This Court has appellate jurisdiction over district court orders refusing injunctions. Appellants filed a notice of appeal on August 20, 2014 [Doc. 20], so this appeal is timely. F.R.A.P. § 4(a)(1)(B)(ii).

## Statement of the Issues

***The District Court erred in denying Plaintiffs-Appellants' motion for a preliminary injunction.***

## Statement of the Case

### Nature of the Case

Plaintiffs-Appellants Georgia Carry.Org, Inc. ("GCO") and David James ("James") seek declaratory and injunctive relief against the United States Army Corps of Engineers ("Corps") and Col. John Chytka ("Chytka"), Commander of the Mobile District of the Corps.

The case arose when James contacted Chytka, requesting permission to carry a loaded firearm when James camped or recreated on Corps property at Lake Allatoona in Northern Georgia. Chytka denied the request, leaving intact as applying against James a Corps regulation that generally prohibits loaded firearms on Corps property. GCO (of which James is a member) sued on the theory that the regulation as applied to James violates James' Second Amendment right to keep and bear arms.

### Proceedings Below

GCO and James commenced this action in the District Court for the Northern District of Georgia and immediately thereafter filed a Motion for Preliminary Injunction [Doc. 5]. After the motion was briefed, the District Court denied the Motion without a hearing, ruling, *inter alia,* that the entirety of Corps property is a "sensitive place" and therefore not subject to Second Amendment protections.

<u>Statement of the Facts</u>

Because the District Court declined to hold a hearing on the Motion for a preliminary injunction, the factual "record" consists largely of the allegations contained in the Complaint. The Corps accepted background facts from the Complaint as true for the purposes of this Motion. Doc. 11, p. 2, FN 1.

1. GCO is a non-profit corporation whose purpose is to foster the rights of its members to keep and bear arms. Doc. 1, ¶¶ 4-5.

2. James is a resident of the State of Georgia and a citizen of the United States. *Id.*, ¶ 6.

3. James is a member of GCO. *Id.*, ¶ 7.

4. James possesses a Georgia weapons carry license ("GWL") issued to him pursuant to O.C.G.A. § 16-11-129. *Id.*, ¶ 14.

5. James regularly keeps and carries a handgun in case of confrontation, except in locations where carrying handguns is prohibited by law. *Id.*, ¶ 16.

6. James frequently camps and recreates on Corps property and facilities at Lake Allatoona. *Id.*, ¶ 17.

7. Lake Allatoona is a Corps project and water facility located in Northwest Georgia. *Id.*, ¶ 18.

8. The Corps provides nearly 600 campsites and 200 picnic sites along the lake. *Id.*, ¶ 21.

9. On May 21, 2014, James sent an email to Col. Donald Walker, of the Corps, asking for written permission to carry a loaded firearm at Allatoona. Walker responded that he had forwarded the request to Chytka. *Id.*, ¶¶30-31.

10.     On June 9, 2014, Chytka denied James' request. *Id.,* ¶32.

Statement on the Standard of Review

<mark>The standard of review for preliminary injunctions is abuse of discretion.</mark> *Alabama v. U.S. Army Corps of Engineers,* 424 F.3d 1118, 1129 (11th Cir. 2005).  In so doing, however, the reviewing court corrects errors of law without deference to the District Court.  *Id.*

## Summary of the Argument

The District Court abused its discretion by finding all Corps property to be "sensitive places" and therefore beyond the reach of the Second Amendment. The remainder of the District Court's conclusions that resulted in denial of the motion for a preliminary injunction can be traced back to the "sensitive place" ruling. Thus, the District Court's further finding that James and GCO would not be irreparably harmed also was erroneous, as were the additional reasons stated by the District Court for denying the motion.

## Argument and Citations of Authority

### *I. All Corps Land Is Not a Sensitive Place*

36 C.F.R. § 327.13(a) provides:

(a) The possession of loaded firearms, ammunition, loaded projectile firing devices, bows and arrows, crossbows, or other weapons is prohibited unless:

(1) In the possession of a Federal, state or local law enforcement officer;
(2) Being used for hunting or fishing as permitted under § 327.8, with devices being unloaded when transported to, from or between hunting and fishing sites;
(3) Being used at authorized shooting ranges; or
(4) Written permission has been received from the District Commander.

(the "Regulation.")  A violation of § 327.13 carries a penalty of a $5,000 fine or 6 months' imprisonment or both.  36 C.F.R. § 327.25(a).

James sought permission under 36 C.F.R. § 327.13(a)(4), and Chytka denied him.  James therefore commenced this case claiming that the regulation as applied to James infringes on James' Second Amendment right to keep and bear arms.  The Second Amendment provides, "A well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed."

The Supreme Court ruled in *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d (2008) that the Second Amendment guarantees a pre-existing fundamental right to "keep and carry weapons in case of confrontation." 554 U.S. at 592, 128 S.Ct. at 2797. *GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1259 (11th Cir. 2012). The Court said that self-defense was the central component of the Second Amendment right. 554 U.S. at 599, 128 S.Ct. at 2801, 687 F.3d at 1259.

The Court also said, however, that its opinion should not "cast doubt on … laws forbidding the carrying of firearms in sensitive places such as schools and government buildings…." 554 U.S. at 626. In the present case, the District Court found that Corps property is a "sensitive place." Doc. 19, p. 24 ("[I]t cannot be overlooked that the existence of Defendant Army Corps' 'recreation facilities' is merely a byproduct of the sensitive dam construction projects nearby…."); p. 27 ("[T]here is no reason to doubt that the Firearms Regulation … does not fall squarely into … laws forbidding the carrying of firearms in sensitive places…."); p. 48 ("The Court finds it reasonable for Defendant Army Corps to limit the carrying of loaded firearms around such sensitive areas.")

The District Court emphasized that the Regulation applies because of "nearby sensitive infrastructure" such as dam projects. Interestingly, neither

the Corps nor the District Court cited any particular distance from the Allatoona Dam that would be beyond the sensitivity zone. The Corps campground frequented by James (McKaskey Creek) is over a mile from the Dam, and there are Corps recreation facilities (e.g., Sweetwater Creek Campground) on Allatoona that are several miles from the Dam.[1] By contrast, Bartow County, Georgia tax records indicate that private residential real estate lies as close as about 1,000 feet from the Dam. The District Court did not attempt to explain how it is that private property a fraction of a mile from the Dam is not a sensitive place, but Corps property miles from the Dam is (because of its proximity to the Dam).

The Corps owns over 15,000 acres of land in Bartow County, Georgia and over 17,000 acres in Cherokee County, associated with Lake Allatoona.[2] The land in Bartow County, which includes the Etowah River, spans from one side of the county to the other. A person boating or canoeing on the Etowah, or just sitting on the shore, is prohibited from possessing a loaded firearm while doing so, even though he may be 20 miles or more from the of the Dam. He nonetheless is in a "sensitive area" according to the District Court.

---

[1] http://www.allatoonalake.org/resources/allatoona-lake-map-1.pdf
[2] http://qpublic7.qpublic.net/ga_display_dw.php?county=ga_bartow&KEY=27369 and http://qpublic7.qpublic.net/ga_display_dw.php?county=ga_cherokee&KEY=15N01++++++029

A district court in another Circuit recently considered and rejected the Corps' "sensitive place" argument in a substantially identical case. *Morris v. U.S. Army Corps of Engineers,* 2014 U.S. Dist. LEXIS 147541, Case No. 3:13-CV-336-BLW, Opinion on Cross Motions for Summary Judgment, (D. Id., October 13, 2014) ("*Morris II*"). In *Morris II,* the Court granted summary judgment to the plaintiffs and permanently enjoined the Corps from enforcing 36 C.F.R. § 327.13 in Idaho. As of this writing, the Corps has not filed a notice of appeal. It cannot be that the Second Amendment bars enforcement of 36 C.F.R. § 327.13 in Idaho but not in Georgia.

The *Morris II* court ruled that the Regulation destroys the Second Amendment right on Corps property, and therefore is unconstitutional *per se.* The *Morris II* Court relied on *Peruta v. County of San Diego,* 742 F.3d 1144, 1168 (9th Cir. 2014), *citing Heller.* The District Court in the present case came to a different conclusion, that the Second Amendment does not apply to Corps property because, the District Court conjectured, citizens were not permitted in 1791 to carry arms on Army property. The District Court did not provide any authority for that conjecture. Even if there were some authority, however, vast recreational areas managed by the Army today bear no resemblance to 18th Century frontier forts.

The District Court also points out that the Corps is not obligated to provide public recreation areas.  That is, the Corps could have dammed up the Etowah River and declared the resulting flooded area, in addition to the downstream river, to be off limits to the public.  The District Court reasoned that if the public can be banned from the land altogether, surely the Corps can ban the public from entering the land armed.

Pretermitting whether the public would tolerate being banned from vast areas of recreational land in the country, not to mention almost all navigable waterways, the theoretical power of the Corps to do so does not result in the conclusion drawn by the District Court.   It is beyond question that the Government may restrict access to public lands or buildings for a variety of reasons.  *United States v. Kokinda,* 497 U.S. 720, 725 (1990) ("The Government's ownership of property does not automatically open that property to the public.")  That power, however, does not translate into power to trample citizens' fundamental constitutional rights when the people are not restricted from access.  *Id.* ("The Government, even when acting in its proprietary capacity, does not enjoy absolute freedom from First Amendment constraints, as does a private business….")  This is especially true where "There is no separation, no fence, and no indication whatever to persons [entering the grounds]…that they have entered some special type of

enclave." *United States v. Grace,* 461 U.S. 171, 180 (1983). The issue in *Grace* was whether the Government could ban protests on the sidewalk in front of the Supreme Court building. The Court ruled that it could not, because the sidewalk in front of the Court was indistinguishable from the surrounding streets and sidewalks of the District of Columbia. Even though the sidewalk was Government property (and not a city sidewalk) and had not been dedicated to public free speech use, the public had a First Amendment right to speak freely on the sidewalk. Likewise, the Corps lands at issue do not constitute some special sort of enclave, and it is entirely possible to pass in and out of Corps property without notice.

Citizens generally have the right to keep and carry arms in case of confrontation, pursuant to the Second Amendment. In the case of Georgia, the state has elected to impose a licensing requirement for people wishing to exercise that right off their own property. O.C.G.A. § 16-11-129. License holders, including James, are not prohibited from exercising the right anywhere in the state, subject to a few narrow exceptions. O.C.G.A. § 16-11-127(c) ("A license holder … shall be authorized to carry a weapon … in every location in this state not listed [in a list of exceptions]…."). James has no reason to believe, when he walks or drives from non-Corps property to Corps property, that he has entered "some special type of enclave" where he

no longer enjoys the right to keep and carry arms in case of confrontation. Just as the sidewalk in front of the Supreme Court is indistinguishable from the sidewalks and streets of D.C., so the lands of the Corps are indistinguishable from the adjacent public and private lands in Georgia.

Indeed, the Corps' Allatoona lands include a state park (Red Top Mountain State Park), county parks (Cherokee County Park, Bartow Carver Park, and Cobb Regional Park), and city parks (Acworth Beach, Canton City Park). All such state and local parks are unrestricted for carrying of firearms by license holders. O.C.G.A. § 16-11-126(g) ("[A]ny person with a weapons carry license may carry a weapon in all parks, historic sites, or recreational areas…."); *GeorgiaCarry.Org, Inc. v. Coweta County,* 288 Ga.App. 748, 655 S.E.2d 346 (2007) (Holding county ordinance banning firearms in recreation areas to be preempted by state law and therefore unenforceable). But because those parks are on Corps property, they are off limits under the Regulation. In general there is no indication to anyone using these facilities that she is in a local government park on Corps property.

James concedes that areas such as the control room for the dam and buildings associated with the adjacent hydroelectric power plant are "sensitive areas" at which the Corps can restrict carrying firearms. Indeed,

such places are not and need not be open to the public in the first place.  But James disputes that as a result of a sensitive location somewhere on the property that hundreds of thousands of acres of largely wilderness area thereby become "sensitive."

## II. The Regulation is Illegal Under the Second Amendment

Because all the vast lands owned by the Corps cannot be "sensitive" places, it becomes necessary to examine the Regulation under the microscope of the Second Amendment.

The *Peruta* Court found that where a regulation "destroys" the Second Amendment right, the regulation cannot be upheld under any standard.  That is, the regulation is unconstitutional *per se.  Peruta v. County of San Diego,* No. 10-56971, (9th Cir., Feb. 13, 2014), *Slip Op.* at p. 45.  ("Put simply, a law that destroys (rather than merely burdens) a right central to the Second Amendment must be struck down.")  *Peruta* explained that "to forbid nearly all forms of public arms bearing would be to destroy the right to bear arms entirely."  *Id.* At 27.

In *Morris II,* the Court applied *Peruta* and concluded that the Corps' Regulation destroys the Second Amendment right altogether on Corps property.  The Court reasoned that unloaded firearms and no ammunition are the most that a person can possess on Corps property, and that an unloaded

firearm is not useful under Second Amendment jurisprudence. The Regulation, *Morris II* reasoned, is therefore unconstitutional and cannot be enforced.

Also decided this year, and coming to a similar conclusion, is *Palmer v. District of Columbia,* No. 1:09-CV-1482-FJS, Document No. 51 (D.D.C., July 26, 2014), Decision on Motions for Summary Judgment. In *Palmer,* the Court ruled on the constitutionality of the District of Columbia's ban on carrying firearms. The Court concluded, "In light of *Heller, McDonald,* and their progeny, there is no longer any basis on which this Court can conclude that the District of Columbia's total ban on the public carrying of ready-to-use handguns outside the home is constitutional under any level of scrutiny." Slip Op. at 16.

It is therefore patently clear that the Corps' Regulation, which bans carrying loaded firearms or ammunition on Corps property, cannot withstand scrutiny under the Second Amendment.

### *III.* The District Court Should Have Issued a Preliminary Injunction

The question therefore becomes whether the District Court should have granted a preliminary injunction to James and GCO. The standard for a preliminary injunction is well known. The court must consider 1) the likelihood of success on the merits; 2) whether the movant will suffer

irreparable injury unless the injunction is issued; 3) that the threatened injury outweighs the harm the injunction would inflict on the non-movant; 4) that the injunction would not be adverse to the public interest. *LSSI Data Corp. v. Comcast Phone, LLC,* 696 F.3d 1114, 1119 (11th Cir. 2012).

The likelihood of success on the merits was thoroughly discussed above. Given that the Regulation "destroys" the Second Amendment right on Corps property, James and GCO have shown that they are highly likely to succeed on the merits.

As for irreparable harm, that test also has been met. If James and GCO are correct that they are likely to succeed on the merits, then the Court must find that their Second Amendment rights are being violated by the Regulation. Exercising a right is not something that can be done retroactively. Once the opportunity to exercise a right on a given occasion is missed, it is gone. This is not a missed business opportunity, which, though perhaps difficult to quantify, can be remedied with damages. It is a missed opportunity, akin to the deprivation or chilling of the exercise of a First Amendment right. It cannot be compensated for with damages. It is a right of an "intangible nature" whose deprivation "could not be compensated for by monetary damages." *Northeastern Florida Chapter of Association of*

*General Contractors of American v. City of Jacksonville, Florida,* 896 F.2d 1283, 1285 (11th Cir. 1990).

James and GCO also have shown that they will be irreparably harmed if the injunction is not issued. James and GCO use Corps property often. They desire to keep and carry loaded and readily available weapons with them in case of confrontation while on Corps property, consistent with their Second Amendment rights to do so. They would do so but for the Regulation that criminalizes such action. They thus refrain from exercising this fundamental constitutional right solely because the Regulation forbids them from doing so on pain of prosecution.

The Seventh Circuit has found that "The harm to their Second Amendment rights cannot be remedied by damages" in reversing a denial of a preliminary injunction in a case involving deprivation of the right to bear arms in *Ezell v. City of Chicago,* 651 F.2d 684, 690 (7th Cir. 2011).

In finding the likelihood of irreparable harm to plaintiffs, the *Morris II* Court determined that the colorable claim of a constitutional violation satisfies the irreparable harm element. *Morris v. U.S. Army Corps of Engineers,* No. 3:13-CV-336-BLW, *Decision on Motion for Preliminary Injunction,* p. 10 (D. Id. January 10, 2014) ("*Morris I*").

No harm would come to the Government if the injunction were issued. Contrary to the Corps' claims, the Corps would not have to shut down its property to visitors to re-tool in the event an injunction were issued. Indeed, one need look no further than Idaho to see a test case. There, in the *Morris I* and *Morris II* orders, the Corps was preliminarily and then permanently enjoined from enforcing the Regulation in the entire State of Idaho. There has not been the widespread disruption of its operations, no massive closing of facilities, no parade of horribles threatened by the Corps in the present case. In hindsight, those horribles are only raised as a hollow specter to dissuade courts from enjoining the archaic (pre-*Heller*) Regulation. Life at the Corps goes on in Idaho, just as it would in Georgia if an injunction were issued. The *Ezell* court explicitly rejected harm "based entirely on speculation" alleged by the City of Chicago if an injunction issued against it. *Ezell, Id.*

Finally, the public interest is readily served with an injunction. The public has a strong interest in seeing the Constitution followed, not violated. The Regulation violates the Second Amendment, and the public interest accrues to preventing continued enforcement of the illegal Regulation.

**Conclusion**

The District Court erred in failing to grant a preliminary injunction.

For the reasons articulated above, this Court should reverse the District Court with instructions to issue a preliminary injunction.

JOHN R. MONROE
ATTORNEY AT LAW


____/s/ John R. Monroe_____
John R. Monroe
Georgia State Bar No. 516193

9640 Coleman Road
Roswell, GA 30075
Telephone: (678) 362-7650
Facsimile: (770) 552-9318

ATTORNEY FOR APPELLANT**S**

**Certificate of Compliance**

I certify that this Brief of Appellants complies with F.R.A.P. 32(a)(7)(B) length limitations, and that this Brief of Appellants contains 4.076 words as determined by the word processing system used to create this Brief of Appellants.

_____/s/ John R. Monroe
John R. Monroe
Attorney for Appellants
9640 Coleman Road
Roswell, GA  30075
State Bar No. 516193
678-362-7650

## Certificate of Service

I certify that I served a copy of the foregoing Brief of Appellants via U.S. Mail on November 5, 2014 upon:

**Abby C. Wright**
**U.S. DOJ**
**950 Pennsylvania Ave., NW, Room 7252**
**Washington, DC 20530**

I also certify that I filed the foregoing Brief of Appellants by mailing it via U.S. Mail to the Clerk on November 5, 2014.

/s/ John R. Monroe
John R. Monroe
Attorney for Appellants
9640 Coleman Road
Roswell, GA 30075
State Bar No. 516193
678-362-7650
